GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California
ELISSE LAROUCHE
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:  (415) 436-7706
Email:  Elisse_Larouche@fd.org

Counsel for Defendant Vazquez

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 21–44 RS |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| LINDA VAZQUEZ, | **Court:** Courtroom 3, 17th Floor<br>**Hearing Date:** February 8, 2022 |
| Defendant. | **Hearing Time:** 9:30 a.m. |

## INTRODUCTION

Linda Vazquez is a resilient woman. She has endured trauma of nearly every type. She has been diagnosed with Posttraumatic Stress Disorder, Major Depressive Disorder, and Borderline Intellectual Functioning. At 49 years old, with over 2 decades of substance abuse and addiction, it is a marvel that she is alive today. Because of her background and the fact that this case is a $20 Tenderloin hand-to-hand undercover drug sale, the government offered Ms. Vazquez diversion, which unfortunately was terminated after Ms. Vazquez violated the terms of diversion. She has been on pretrial supervision for approximately 16 months since her initial arrest in September 2020. During this time, there have been ups and downs. In March of 2021, she successfully completed a

three-month, inpatient substance abuse and mental health program for women. Recently, however, she has continued using drugs and has had issues with compliance. Throughout, Ms. Vazquez has been honest, open, and not committed any new offenses. She is also working on housing stability and recently obtained a voucher for permanent housing. She will be able to move in with her new puppy, Bella, an immense emotional support for her.

While Ms. Vazquez has certainly faltered in terms of compliance and continued drug use, given Ms. Vazquez's history and circumstances, pretrial supervision has been successful in the harm reduction of Ms. Vazquez's own drug use and that she is no longer selling drugs in the community. A sentence of time served and 2 years of supervised release, in addition to the 16 months of pretrial supervision already completed, will best serve the sentencing goals at 18 U.S.C. 3553(a).

The defense objects to Probation's finding that Ms. Vazquez is a career offender and contends that the Court should follow the parties' plea agreement setting forth an offense level of 10. With Ms. Vazquez's Criminal History Category at VI, her guideline range is 24 to 30 months.

## ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). "[T]he sentencing judge [must] consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The factors listed at 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the U.S. Sentencing Guidelines is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

I.   **Ms. Vazquez's history and characteristics are marked by trauma and substance abuse.**

"Ms. Vazquez'[s] background and history are characterized by an inordinate amount of trauma and turmoil." Larouche Decl., ¶ 2 Ex. A, Psychological Evaluation of Dr. Caroline Salvador-Moses,

Psy. D. Dr. Salvador-Moses's psychological evaluation of Ms. Vazquez contextualizes where we find Ms. Vazquez today – as a survivor of domestic violence and sexual abuse.

**A.   As a child, Ms. Vazquez was poor, neglected, and sexually abused.**

Ms. Vazquez's mother failed to care for and protect her, and her father was never a part of her life. *See* PSR ¶¶ 68, 70–73. When Ms. Vazquez was a newborn, her mother sent her to her grandparents in Mexico. PSR ¶ 70. Upon reunification with her mother, they struggled financially and were unstable, jumping from place to place to find work. PSR ¶ 70, 71. At around 6 years old, Ms. Vazquez started working. PSR ¶ 70. She worked in the fields picking watermelons and grapes and worked other jobs, including at the swap meet, cleaning houses, and full-time care for her cousins. *Id*. Because of this work and constantly moving, Ms. Vazquez missed school and never remained in school for an entire school year. PSR ¶ 71. By seventh grade, she stopped attending. PSR ¶ 93. During these years, she had intermittent shelter and often received food from the food pantry. PSR ¶ 71.

Around age 12, after Ms. Vazquez informed her mother that her stepfather was emotionally, physically, and sexually abusing her, her mother chose to get rid of her daughter to protect her relationship with her husband. PSR ¶ 73; Ex. A at 2. When Ms. Vazquez told her mother about the abuse, it wasn't the first time she had been experienced it. Ex. A. at 2. She had escaped her stepfather before by crawling out of the window and sleeping outside. *Id*. That led to more abuse when a man found her and raped her. *Id*. Back at home, Ms. Vazquez was also sexually molested by an uncle who sexually abused his own children as well. *Id*. Nowhere was safe for Ms. Vazquez. That remained true when she was sent to live with a family in Arizona and their 17-year-old son, Elias. PSR ¶ 73.

As soon as Ms. Vazquez moved in with the family, Elias asserted control over her, groomed her, and forced her into a sexual relationship starting at age 13. *Id*.; Ex. A at 3. She became pregnant with his first child at 14 years old and had a child with him every year thereafter until she was 20. PSR ¶ 73. Not only did he rape her for years, he beat her daily. Ex. A at 3. On one occasion, he beat her while she was pregnant with twins and she lost one of the twins. *Id*.

Finally, Ms. Vazquez escaped Elias and found refuge in a women's shelter. PSR ¶ 74. Elias found her there too though, shooting at the shelter and going after Ms. Vazquez. Ex. A at 3. Even

after she was able to divorce Elias, he maintained the ultimate act of control by not bringing their children back after one visit. PSR ¶ 75. Ms. Vazquez did not see her children for years and to this day, their relationship is strained because of how Elias has turned them against Ms. Vazquez by telling them she did not want them. *See* PSR ¶ 75.

### B. Ms. Vazquez continued to be a victim of domestic violence and has serious physical health conditions.

As a woman with low intellectual functioning, few resources, and substance abuse problems, she was an easy target for violent men. As noted in the PSR and verified by medical records, "she has also been hospitalized after many incidents of assault, some of which involved serious injuries from stabbing and being hit on the face and body as well as rape." PSR ¶ 81. She has head trauma from being hit with bottles by partners and has been stabbed by a partner, incidents verified by medical records and hospital admissions. *Id.*; Ex. A at 3.

In addition to injuries from physical violence, Ms. Vazquez has numerous physical health issues. She is immunosuppressed and has anemia and neutropenia. PSR ¶ 81. She suffers from cellulitis, abscesses, colitis, rheumatoid arthritis, splenomegaly, Shigella, vasculitis, thrombocytopenia, sepsis, bilateral hearing loss, vision issues with glaucoma, among others. *Id*. She currently receives Social Security Income because of her medical conditions. PSR ¶ 95.

### C. The Court should consider Ms. Vazquez's medical diagnoses and substance abuse disorder in assessing her performance on pretrial release and determining the appropriate sentence.

Ms. Vazquez suffers from serious mental illness and low cognitive functioning that impair her ability to cope and function. Dr. Salvador-Moses's testing concluded that Ms. Vazquez has DSM-5 diagnoses including: Posttraumatic Stress Disorder; Major Depressive Disorder, Recurrent, Severe with psychotic features; and Borderline Intellectual Functioning. Ex. A at 11; PSR ¶ 86. These disorders impact Ms. Vazquez's ability to carry on in daily life. Ms. Vazquez's Full-Scale IQ score placed her in the 1st percentile with an "extremely low" classification. Ex. A at 7. She fared similarly in other cognitive functioning tests. *Id*. Dr. Salvador-Moses opined that "[d]isrupted education, the neurophysiological effects of trauma, limited opportunities for educational enhancement, history of head injuries along with possible genetic influence, are likely factors that contributed to impairments

in her neurocognitive functioning." *Id*. at 7–8. As to emotional functioning, Dr. Salvador-Moses found Ms. Vazquez had high elevations of depression, anxiety, paranoia, and interpersonal sensitivity. *Id*. at 8. Taken together, these intellectual deficits and emotional impairments make life difficult for Ms. Vazquez and explain why she has struggled on pretrial supervision.

Ms. Vazquez has a substance abuse disorder. In order to cope with loss, anxiety, and depression, especially the loss of her children, she turned to drugs to self-medicate. Ex. A at 3–4. She has an extensive familial history of drug and alcohol abuse, which led to a vulnerability in using herself. Ex. A at 3. Starting at 27 years old, she became a daily crack cocaine user. PSR ¶ 88. She has had periods of sobriety while in substance abuse treatment and had three months of sobriety in 2021 while at the Epiphany House mental health and substance abuse treatment center in San Francisco. PSR ¶ 90. However, Ms. Vazquez slipped back into using and is again struggling with daily use. Ms. Vazquez is currently required to attend Community Justice Center Court (CJC) in San Francisco and her clinician is working with her to identify additional treatment and support options. Larouche Decl., ¶ 3.

While Ms. Vazquez's actions might may seem like apathy or a lack of concern for rehabilitation and the court's rules, rather, Ms. Vazquez is battling medical and emotional disorders to try to comply with her various obligations. That she remains in contact with those involved in her supervision shows she is making real efforts, and her success should be measured in the context of her medical and mental health disorders.

**II.     The nature and circumstances of the offense make clear that this was a low-level drug offense that Ms. Vazquez committed to support her own addiction.**

In February 2020, nearly two years ago, the San Francisco Police Department organized a drug purchase in which an officer gave Ms. Vazquez's co-defendant $20 for crack cocaine and then the officer was walked over to Ms. Vazquez who gave him four baggies of narcotics. PSR ¶ 7. Ms. Vazquez was the street-level bag holder for drug buyers and sellers. *Id*. She is near the lowest in the totem pole of a drug organization, placed on the street where she was vulnerable to arrest. She has admitted that her addiction to crack cocaine has caused her problems and that she has sold to pay for her habit. PSR ¶ 89. Looking at Ms. Vazquez's criminal history, it is evident that this isn't her first

drug sale conviction. But given her substance abuse history and the sentences on most of her convictions, it is also evident that has sold to fuel a habit, not to be a player in some larger drug organization. The Court should consider the nature of the offense as a low-level drug offense involving $20 and the motive for the offense being Ms. Vazquez's own addiction.

In considering the nature and circumstances of the offense, the Court should also consider the numerous other Tenderloin hand-to-hand drug offenses, for which time-served sentences have routinely been imposed.[1]

### III. The Court should find the offense level in the plea agreement and corresponding guideline range of 24-30 months is appropriate.

Ms. Vazquez pleaded guilty pursuant to a plea agreement with the government. The parties agreed that Ms. Vazquez's offense level was 12, minus 2 for acceptance of responsibility, resulting in a final offense level of 10. The defense objects to the Presentence Report's finding that Ms. Vazquez is a career offender and contends that the Court should follow the parties' agreed-upon offense level of 10. Ms. Vazquez does not object to the PSR's finding that she is in criminal history category VI. Accordingly, her guideline range is 24 to 30 months.

### IV. Ms. Vazquez objects to the PSR's finding that she is a career offender because the record does not support that finding.

The Court should find that the career offender enhancement does not apply because it is not supported by the record, which is devoid of any court documents for the applicable convictions. Finding Ms. Vazquez to be a career offender would also be legally incorrect. The PSR cites Ms. Vazquez's convictions at paragraphs 30 and 33 and finds those offenses to be controlled substance offenses that trigger career offender enhancement. *See* PSR at Addendum, Objections; U.S.S.G. §4B1.1(b)(3). That enhancement is extremely significant because it increases Ms. Vazquez's offense level from 12 to 32 – increasing the low-end of the guideline range from 24 months to 151 months

---

[1] *See, e.g.*, *United States v. Sagastume Pineda*, CR-20-444 SI. Mr. Sagastume Pineda was convicted of possession with intent to distribute over 30 grams of cocaine base, and faced a Guidelines range of 24-30 months with an offense level of 17 and Criminal History Category of I. Judge Illston sentenced him to time served (effectively 10 days). *United States v. Brayan Arteaga*, CR 19-426 WHO. Mr. Arteaga was convicted of a $16 crack cocaine sale. He was on probation at the time of the offense, and faced a Guidelines range of 8–14 months with an offense level of 10 and a Criminal History Category of II. Judge Orrick sentenced him to time served (effectively one month).

DEFENDANT'S SENTENCING MEMORANDUM
*VAZQUEZ*, CR 21–44 RS

after adjusting for acceptance of responsibility. *See* PSR ¶ 20.

First, the government bears the burden of proving factors enhancing a sentence. *United States v. Romero-Rendon*, 220 F.3d 1159, 1160 (9th Cir. 2000). "When a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of the conviction . . . the government may have to satisfy a clear and convincing standard." *Id.* (internal quotations and citation omitted). Here, the government does not contend that the sentencing enhancement should apply and argues that the calculation in the plea agreement is correct. Dkt. 86, Gov. Mem. at 2. That alone implores the Court to find the career offender enhancement does not apply. Further, the categorical approach applies to determine whether the state convictions the probation office points to are in fact federal controlled substance offenses triggering the enhancement. *See United States v. Kelly*, 422 F.3d 889, 892 (9th Cir. 2005). The categorical analysis cannot be conducted here because there are no court documents or conviction documents in the record before the Court. In the absence of such documents, no finding can be made that the convictions probation points to are in fact controlled substance offenses.

Second, even with the information noted in the PSR, the noted convictions do not amount to the two required controlled substance offenses that might trigger the career offender enhancement. The first conviction probation notes is at paragraph 30 and is listed as "11352(a) HS – Sale and Offer to Sell a Controlled Substance." PSR ¶ 30; PSR Addendum, Objections. Again, the charging document for this offense is not in the record, but probation asserts it reflects the offense as "Sale and Offer to Sell a Controlled Substance." PSR Addendum, Objections. The Ninth Circuit has held that "offer to sell" language makes a statute "categorically overbroad with regard to its actus reus requirement because it criminalizes the mere 'offer to' commit certain offenses related to a controlled substance." *United States v. Martinez-Lopez*, 864 F.3d 1034, n.3 (9th Cir. 2017) (holding Section 11352 is overbroad because the statute punishes both more conduct and types of controlled substances than covered under the federal scheme) (citing *United States v. Rivera-Sanchez*, 247 F.3d 905, 908–09 (9th Cir. 2001) (en banc), *superseded on other grounds by* U.S.S.G. § 2L1.2, cmt. n. 4 (2002)) (holding California statute that included solicitation offenses with the use of the language "offers to" in the context of marijuana trafficking did not categorically qualify as an aggravated felony). The use of "offer to" broadens the punishable conduct by punishing the mere solicitation of the enumerated acts. *Rivera-Sanchez* affirmed

that California state statutes punishing solicitation in this manner are overbroad compared to federal Controlled Substances Act offenses. *See id*. at 908–09. Accordingly, Ms. Vazquez's conviction for 11352(a) HS is categorically overbroad and is not a controlled substance offense.

The second conviction probation notes is at paragraph 33 for "11378 HS – Possession for Sale of Controlled Substance." PSR ¶ 33, PSR Addendum, Objections. Again, there are no court documents of this conviction in the record before the Court. Nonetheless, probation responds that the charging document reflects the offense as "Possession for sale of a controlled substance," and states "possess for purpose of sale a controlled substance, to wit: Methamphetamine." PSR Addendum, Objections. Probation then makes a conclusory statement that "the charging document and court minutes . . . *appear*[] to support the conviction[] in paragraph[] . . . 33 [is a] controlled substance offense[]." *Id*. The Ninth Circuit has held that Section 11378 is overbroad as to the controlled substance requirement. *See United States v. Vega-Ortiz*, 822 F.3d 1031, 1034 (9th Cir. 2016) (reaffirming that § 11378 was not categorically an aggravated felony because the full range of conduct covered under the statute does not fall within the Controlled Substance Act drug schedules). Section 11378 is divisible as to drug type and the modified categorical approach applies, in which the Court can look to certain documents to determine the elements of the offense that the defendant *necessarily* plead guilty to. *Id*. at 1035. Because no documents are in the record, this inquiry cannot be conducted. The information in probation's response to the objection is insufficient because from the information provided it is not clear what Ms. Vazquez pleaded to as elements of the offense. There is a "demand for certainty" when determining whether the defendant was convicted of a federal, generic offense, and that requirement is not met here. *Shepard v. United States*, 544 U.S. 13, 22 (2005).

In sum, there are no court documents in the record for the Court to analyze to determine whether the cited convictions are controlled substance offenses triggering the career offender enhancement. Further, the government has the burden of proof for any sentencing enhancement and it makes no effort to meet it here. Accordingly, the Court should find that the career offender enhancement does not apply.

**V.    Ms. Vazquez is safety valve eligible and there is no mandatory term of supervised release.**

The Court is not required to impose the statutory mandatory minimum of three years of supervised release, 21 U.S.C. § 841(b)(1)(C), because Ms. Vazquez is eligible for Safety Valve relief.

Safety Valve relief not only applies to mandatory minimum custodial sentences, but also to any mandatory minimum terms of supervision. *See* U.S.S.G. §5C1.2 cmt. n. 9; *United States v. Juarez-Aquino*, 735 F. App'x. 337, *338 (9th Cir. 2018) (unpublished) (determining that because the defendant was entitled to safety valve relief under 18 U.S.C. § 3553(f), the three-year mandatory supervised release provision did not apply).

An individual is not rendered ineligible for Safety Valve relief from mandatory minimums unless she has all three of the criminal history items listed in 18 U.S.C. § 3553(f)(1). *United States v. Lopez*, 998 F.3d 431, 433 (9th Cir. 2021). Here, Ms. Vazquez does not have the third item listed at 18 U.S.C. § 3553(f)(1) -- a prior 2-point violent offense. Accordingly, Ms. Vazquez is eligible for safety valve relief and there is no mandatory minimum supervision term that applies.

### VI. A sentence of time served with two years' supervision is appropriate because it is an adequate deterrent and just punishment.

Ms. Vazquez has been subject to pretrial supervision for approximately 16 months and has spent 15 days in custody. PSR at 1. During supervision, Ms. Vazquez has been ordered to a three-month inpatient treatment program, to attend individual counseling weekly, to drug test, and to maintain communication with her federal pretrial officer. At the same time, she has obligations to attend her San Francisco CJC Court. All of these obligations and the obligations that would continue on supervised release are a sufficient specific and general deterrent.

Although this Court and the CJC Court's interventions have not stopped Ms. Vazquez's drug use, she did successfully complete a three-month treatment program and Ms. Vazquez has benefited from the oversight that has helped keep her safe when her addiction and depression hit hard.

In Ms. Vazquez's case, one of decades of substance abuse and trauma and serious medical disorders and health issues, a sentence of time served and 2 years of supervised release is sufficient but not greater than necessary to fulfill the sentencing goals of 18 U.S.C. § 3553(a). Sending Ms. Vazquez to prison will not help her overcome her addiction, especially while there continues to be very minimal programming in the Bureau of Prisons and Santa Rita Jail. Rather, going to prison would bring Ms. Vazquez back to society less-equipped to face her substance abuse and more likely to recidivate. Right now, she has housing available, she has a support dog she cares for, and she is

working with her CJC clinician to determine what she can do to improve her efforts toward rehabilitation. This Court can continue to monitor her progress while on a term of supervised release.

## CONCLUSION

At 49 years old, Ms. Vazquez has survived many things and continues to battle others, including her long-term substance abuse disorder. A term of imprisonment would not promote her rehabilitation or protect the public. Considering Ms. Vazquez's history and characteristics, the nature and circumstances of the offense, and the need for adequate deterrence and a just punishment, a term of supervision, with the 16 months of pretrial supervision already served, is sufficient but not greater than necessary to achieve the sentencing goals of 18 U.S.C. § 3553(a). Ms. Vazquez respectfully requests that the Court impose a sentence of time served and two years' supervised release to follow.

Dated:	February 1, 2022			Respectfully submitted,

GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California

            /S
ELISSE LAROUCHE
Assistant Federal Public Defender